FRANKLIN v. MONNING DRY GOODS CO.

(Circuit Court of Appeals, Fifth Circuit. November 30, 1914.)

No. 2592.

BANKRUPTCY (§ 407*)—DISCHARGE—DENIAL—GROUNDS—FALSE CREDIT STATE-MENT—"FALSE."

Bankr. Act July 1, 1898, § 14b (3) (Comp. St. 1913, § 9598), provides that the judge of a bankruptcy court shall hear an application for the bankrupt's discharge, and shall discharge him unless, among other things, he has obtained money or property on credit on a materially false statement in writing made by him to any person or his representative to obtain credit from such person. *Held*, that the word "false" in such section was not used in its vernacular sense of erroneous or untrue, but rather as untrue coupled with a lying intent, or intentionally untrue, and hence was not satisfied by a financial statement made by the bankrupt while away from home, and without his books and records, while he was in a hurry to return, because of the illness of his wife, from which statement he omitted an item of indebtedness amounting to $4,300 and also assets of an equal or greater amount (citing Words and Phrases, "False").

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

Appeal from the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Application by Earl Clifford Franklin for a discharge in bankruptcy, to which the Monning Dry Goods Company filed objections. From an order overruling exceptions to the objections, and denying a discharge, petitioner appeals. Reversed and remanded, with directions.

D. M. Alexander, of Ft. Worth, Tex., for appellant.
R. Y. Prigmore, of Ft. Worth, Tex., for appellee.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

CALL, District Judge. This is an appeal from the judgment of the District Court for the Northern District of Texas, denying the appellant a discharge in bankruptcy.

In this case the appellant was adjudged a bankrupt on February 15, 1912, and on January 6, 1913, filed his petition for a discharge, and on May 10th Monning Dry Goods Company filed specifications of objections to such discharge, alleging in such specifications that the bankrupt had in February, 1911, made a written statement of his assets and liabilities for the purpose of obtaining credit, and that such written statement was materially false in certain respects, to wit: The bankrupt had omitted certain of his debts in said statement, amounting in the aggregate to about $4,534. On September 17, 1913, the referee filed his report, finding that the statement of indebtedness of the bankrupt was incorrect, and at the time of making it he owed about $4,300 more than the statement showed, and thereupon reported his recommendation denying the discharge. On September 20th exceptions to the report of the referee were filed by the bankrupt, in which he at-

tacked the correctness of the report of the referee in recommending the denial of the discharge on various grounds. This matter came on for hearing before the judge of the Northern district of Texas, who, having heard the parties, on the 13th of November, 1913, made his order confirming the report of the referee, overruling the exceptions to the same by the bankrupt, and denying the discharge. It is from this order that this appeal is taken.

The proofs taken by the referee, and considered by the District Judge in making his order overruling exceptions and denying the discharge, show that this written report made to the Monning Dry Goods Company was made at Ft Worth, away from his place of business, and away from his books. It was admitted by the bankrupt on the hearing before the referee that the debts found by the referee not to be included in his statement were at the time due and were not included in that written statement, but he claims that it was an oversight entirely, made by reason of his being at Ft. Worth with a sick wife, away from his books and business, and with no intention to deceive. This statement was made in February, 1911, and not read over at the time it was signed; that he had omitted from this statement certain assets larger in amount than the omitted debts, and was simply intended by him as an estimate of his debts. The proofs also show by the testimony of Monning, president of the appellant in this case, that credit was advanced upon the statements made, and that goods were thereafter sold on credit relying upon statements made in the writing. The referee found that the statement was materially false, and made in writing for the purpose of obtaining property on credit, and that property was obtained on credit upon said statement, and the only question to decide was whether or not said statement was so materially false as to bar the discharge of the bankrupt and defeat the protection of the statute. The exceptions filed by the bankrupt were aimed at this conclusion of the referee. The District Judge, in the opinion filed by him at the time of making the order denying the discharge, has this to say:

"But when there is taken into consideration the total of his liabilities as they are revealed in his statement and the amount of the items which he failed to include, it cannot be concluded that the bankrupt made a full and true statement, giving all of his liabilities and confidential debts as declared by him. The statement was made as a basis to secure an additional line of credit. It was accepted and relied on by the concern to whom it was made. It appears from the testimony in the record that the party accepting the statement and acting thereon would not have extended further accommodation and given additional credit, had the statement revealed the bankrupt's actual condition as to indebtedness. In my opinion the statement must be held to be materially false in the sense that phrase is used in section 14b (3) of the Bankruptcy Act."

It is therefore the duty of this court to construe the meaning of the words used in section 14b, cl. 3, of the Bankruptcy Act, as applied to the facts shown in this case. Section 14b (3) of the Bankruptcy Act is as follows:

"The judge shall hear the application for a discharge, * * * and discharge the applicant unless he has * * * obtained money or property on

credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person."

The facts found by the referee and the District Judge, unquestionably sustained by the proofs, are in short that the statement was in writing for the purpose of obtaining credit, and that property was obtained on credit on said statement, and that said statement was untrue in the material statement of his debts owing at the time of making said statement, as well as to the amount of his assets at said time to an amount equal or greater than the debts omitted. If the words used in the statute are to be construed as they evidently were by the District Judge in this case, there is a clear case made out for the denial of the discharge; and it is pertinent to the inquiry before us to remark that the false statement of the amount of assets, in omitting to state all of them, would equally bar a discharge, if such construction is to be given these words. It is just as material for the purpose of obtaining credit, and equally untrue. Yet we apprehend no one will be found to champion such a construction. We must therefore go further, and ascertain the meaning of the words used by Congress in the act, and the intention of the lawmakers in the use of the words.

This section provides for the discharge of the bankrupt in all cases except those mentioned in section 14b, cls. 1 to 6, inclusive, and is intended for the beneficent purpose of discharging the honest bankrupt from the burden of his debts and thus allow him to begin his business life anew. And this discharge is to be denied only where he is guilty of some one or more of the prohibited acts: (1) Guilty of an act punishable by imprisonment under the act. (2) Destroying, concealing, or failing to keep books with intent to conceal his financial condition. (3) As above set forth. (4) Removing, destroying, concealing, or permitting same, of any of his property within four months, with intent to hinder, delay, or defraud his creditors. (5) In voluntary proceedings, having been granted a discharge within six years. (6) Having refused to obey any lawful order or answer any material question approved by the court in the bankruptcy proceedings.

The intent of the lawmakers can to some extent be gathered by taking into consideration the entire section. There are many decisions construing the grounds for refusing a discharge, other than (3) now under consideration, that materially aid in arriving at the conclusion that it is not within the spirit of the objection that "false," as used in the act, means simply "untrue." This court, in Hardie v. Swafford Bros. Dry Goods Co., 165 Fed. 591, 91 C. C. A. 429, 20 L. R. A. (N. S.) 785, construing this clause of section 14b, uses this language:

"For these considerations we are disposed to deny that in the present bankruptcy law the discharge of the honest debtor is a mere incident which could have been omitted without impairing its symmetry and efficiency, and, on the contrary, to assert that the release of the honest, unfortunate, and insolvent debtor from the burden of his debts, and restore him to business activity, * * * is one of the main, if not most important, objects of the law."

In Gilpin v. Merchants' National Bank, 165 Fed. 607, at page 610, 91 C. C. A. 445, at page 448 (20 L. R. A. [N. S.] 1023), Circuit Judge

Gray, speaking for the Circuit Court of Appeals for the Third Circuit, ·uses this language:

"We fail to perceive any sufficient ground for denying to the third reason for refusing a discharge to the bankrupt, the general characteristic of personal misconduct, that attaches to all others, as set forth in said section of the Bankrupt Act. It would indeed be a harsh construction, and at variance with the general policy of the Bankrupt Act, that would make the conduct described in clause 3 an exception in this respect to the whole category of acts which may severally deprive the bankrupt of his privilege of discharge. It is a construction which should not unnecessarily be made."

And at page 611 of 165 Fed., page 449 of 91 C. C. A., 20 L. R. A. (N. S.) 1023, we find the following:

"But apart from the incongruity imported into this section of the Bankruptcy Act by such construction, it seems to us clear language of this third clause of section 14b requires that the written statement made by the bankrupt, for the purpose of obtaining credit, etc., should be knowingly and intentionally untrue in order to constitute a bar to discharge of the bankrupt. In other words, 'false statement' connotes a guilty scienter on the part of the bankrupt."

In Words and Phrases the word "false" is defined as follows:

"False means that which is not true, coupled with a lying intent."
"False, in jurisprudence, naturally imports something more than the vernacular sense of 'erroneous' or 'untrue.' "

Collier on Bankruptcy (9th Ed.) at page 352, says:

"Falsity of the statement must be proven; and so it is thought that it should be shown that the debtor knew it to be false, or at least did not know it to be true."
"Intention to deceive is always material as an element of proof, and by the weight of authority it is essential to prove such intent."

We therefore have reached the conclusion that the word "false," as used in clause 3 of section 14b of the Bankruptcy Act, means more than untrue, erroneous, or mistaken, but means "false" in the sense that it is "intentionally untrue."

There is no claim in this case that the untrue statement in the instant case falls under the ban of this construction. On the contrary, the incidents and circumstances surrounding the making of the statement would indicate that the bankrupt, believing himself in a sound financial condition, away from his books, with his sick wife away from home, and in a hurry to get back to her, made the statement as a general estimate, rather than an itemized statement of his exact financial condition, such as it might be reasonably supposed a man would make with all the data before him.

It appears from the record that the bankrupt in this case had two places of business, one at Vineville, and the other at another place some distance away, and it was stated in argument before us that there were two statements made setting out liabilities and assets. In the proceeding in this case the record only shows that one statement was relied upon, and is entirely silent as to the other statement. It may be that on another trial of this case the second or other statement will become very material in ascertaining whether, taking both statements together, either or both were "intentionally untrue." This ques-

tion, of course, would have to be settled at the retrial of the case hereinafter directed.

The case is therefore reversed, and remanded to the lower court for such further proceedings in consonance with this opinion as may be necessary. The costs of this appeal to be taxed against the appellee.