## In re CAZER.

(District Court, N. D. Iowa, C. D. July 31, 1922.)

### No. 1359.

1. Bankruptcy ⊜⟶407(5)—"Materially false statement in writing," to bar discharge, must be signed or adopted by bankrupt.

A materially false statement in writing, which will authorize refusal of a discharge under Bankruptcy Act, § 14b(3) (Comp. St. § 9598), must either have been written or signed by the bankrupt, or the particular writing and language must have been adopted and used by the bankrupt.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Materially False Statement.]

2. Bankruptcy ⊜⟶414(3)—Discharge held barred by fraudulent transfer of property.

Evidence held to sustain objection to the discharge of a bankrupt on the ground that within four months he had transferred property with intent to hinder, delay, or defraud his creditors.

In Bankruptcy. In the matter of John L. Cazer, bankrupt. On petition of bankrupt for discharge. Denied.

Robinson & Boomhower, of Mason City, for objecting creditors.
Ira W. Jones, of Clear Lake, for bankrupt Cazer.

SCOTT, District Judge. The above-entitled matter came on for hearing before the court on the 13th day of June, 1922, on the petition of the bankrupt for discharge, and the objections and specifications of certain creditors in opposition thereto. The specifications in opposition to discharge were six in number, but, with the exception of two, were

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

so indefinitely and irregularly drawn as not to present any particular ground of opposition. The petition and objections were referred to a special master, who took a large volume of testimony and reported findings of fact, including recommendations. The special master in his report treated only two of the specifications, and counsel for objecting creditors in their briefs adopted the same plan, treating the additional specifications as merely auxiliary to the two reported on, which the court thinks was entirely proper. The special master reported upon specifications 1 and 3, holding each of these specifications sustained by the proof and recommending a denial of the discharge on each.

[1] The first specification of objection to discharge is in substance that on or about the 17th day of March, 1921, the bankrupt obtained money, property, and credit from the Citizens' Savings Bank of Hanlontown, Iowa, upon a materially false statement in writing, within the meaning of section 14b, subd. 3, of the Bankruptcy Law (U. S. Comp. St. § 9598). The testimony, without any material dispute, shows that about March 17, 1921, the bankrupt had a conversation in one of the banking rooms of said bank with C. S. Rye, vice president of the bank, in which conversation Rye interrogated the bankrupt with reference to his property. Rye testifies that he took the statement down in writing in the presence of the bankrupt. The statement, identified and introduced in evidence, however, is in typewriting and signed, "Citizens' Savings Bank, Hanlontown, Ia., C. S. Rye, Vice President," and sworn to by said Rye. It purports to have been signed by Rye on the 12th of April, 1922, more than a year after it is claimed the statement was made by the bankrupt. The bankrupt himself neither made nor signed any statement in writing, and there is a conflict in the testimony of the bankrupt and Rye as to just what statement was orally made. The court concludes that the most that can be claimed for the transaction is that the bankrupt made an oral statement in response to questions by Rye respecting the amount and character of his property, and that Rye afterwards reduced it to writing, and, apparently for the purpose of identification, signed it himself.

In the opinion of the court this does not bring the statement within the prohibition of section 14b, subd. 3. In the opinion of the court, to come within this provision of the statute, the statement, to be in writing, must either have been written by the bankrupt, signed by the bankrupt, or the particular writing and language must have been adopted and used by the bankrupt. Upon the subject, Collier on Bankruptcy (12th Ed.) at page 389, has this observation:

"*In Writing.*—Of this term the framers of the amendatory act of 1903 have said: 'This objection, as is proper, will be of no avail when a commercial report is obtained in the haphazard fashion of a hasty interview. The statement must be in writing, which, of course, implies the signature of the person to be charged thereby.' * * * Where alleged false statements do not appear by the specifications of objection to have been made in writing, they are not within the provisions of this section, and the discharge should not be refused"—citing In re Lewis (D. C. N. Y.) 163 Fed. 137.

The case cited, supra, supports the conclusion above quoted.

Objecting creditors rely upon In re Aldridge (D. C.) 168 Fed. 93. In this case the statement was made and signed by the vice president of

a bank at the request of the bankrupt, and the bankrupt adopted and used the statement. There is a clear distinction between the circumstances disclosed in Re Aldridge, and the circumstances of the instant case. However, in the opinion of this court, In re Aldridge goes beyond the fair interpretation of the language of the act, and this court is not disposed to follow that ruling. In the opinion of the court, the report of the special master on specification No. 1 should not be approved, and so far as that specification is concerned it must be held insufficiently supported by the evidence.

[2] The second specification reported on, being specification 3 as filed, was in substance and effect that, subsequent to the first day of the four months immediately preceding the filing of the petition, the bankrupt transferred, removed, and concealed a large portion of his property with intent to hinder, delay, or defraud his creditors. The specification is not thus formally drawn, but the court is inclined to interpret the same liberally, and hold it sufficient under section 14b, subd. 4. The special master finds that within the period specified the bankrupt sold a considerable of his property during the months of October and November, 1921, which was within the period stated, with the intent to hinder, delay, or defraud his creditors. The finding is very general, and does not distinctly disclose what property was so disposed of, and the court is obliged to go to the transcript of the evidence itself for the facts.

After careful examination of the testimony, however, the court is of opinion that the sheep, hogs, and cattle sold by the bankrupt during the months of October and November, as disclosed by the testimony, were the property of the bankrupt, and were sold by him with intent to hinder, delay, and defraud his creditors. The entire conduct of the bankrupt for several months prior to the filing of his petition indicates a deliberately fraudulent preparation for an advent into bankruptcy. He had executed a note and chattel mortgage to his brother for $4,000, when admittedly he only owed his brother a small portion of that sum. For a considerable portion of the property sold he claims to have paid over to his brother, who was in fact a man of no particular means, and as stated, merely a hired man. A large portion of the balance of his property the bankrupt claims belonged to his wife. This was possibly true with respect to a few items of property, but as to the larger portion the court finds the claim insufficiently supported by the evidence. Upon the whole record, in the opinion of the court, the conclusion of the special master upon this specification is correct and should be approved. The court is thoroughly convinced that the bankrupt fraudulently intended to place his assets largely beyond the reach of creditors before filing his voluntary petition in bankruptcy.

The finding and report of the special master upon the third specification filed by objecting creditors is therefore approved, and, upon this specification, petition of the bankrupt for discharge is denied.