**In re MUSS.**

**No. 168.**

Circuit Court of Appeals, Second Circuit.

Dec. 12, 1938.

David Muss, of New York City, for appellant.

Wrenn & Schmid, of Brooklyn, N. Y. (William J. Cosgrove, of Brooklyn, N. Y., of counsel), for appellee Kings County Trust Co.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Upon his voluntary petition Isaac Muss was adjudicated a bankrupt on April 6, 1937, and in due time applied for a discharge. Kings County Trust Company, a creditor, filed specifications of objection based upon the failure of the bankrupt to keep books of account or records from which his true financial condition might be ascertained. A special master to whom the matter was referred filed a report recommending denial of a discharge. From an order confirming the report and denying the discharge the bankrupt has appealed.

Section 14b of the Bankruptcy Act as amended in 1926, 44 Stat. 663, 11 U.S.C.A.

§ 32(b), directs the court to grant the discharge unless the bankrupt has "(2) destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case."

By the proviso to said subsection (b) the burden is placed upon the bankrupt of proving that he has not committed any act barring his discharge, if the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that he has committed such act. Appellant contends that he has carried that burden.

The bankrupt produced no personal books or records of any kind; he testified that he never kept any. His explanation is that he transacted most of his business through two corporations, Endocardium Building Corporation and Treasureland Homes Corporation, and he argues that their books sufficiently disclose his financial condition and business transactions. The special master and the district judge were not convinced that they do; nor are we.

For a number of years prior to 1929, the bankrupt was a large owner of real estate and was engaged in building operations which he conducted through the above named corporations. A financial statement as of January 1, 1928, prepared by a certified public accountant later in the year, gives the bankrupt's assets as nearly $700,000, and his liabilities as $80,491.56. As shown by this statement more than two-thirds of the bankrupt's assets were outside of his investments in the two corporations. For example, the statement lists an apartment house, mortgaged for $89,500 and having an equity valued at $120,500. The bankrupt testified that the annual rentals from this property were $22,000. He testified also that he raised about $60,000 by further mortgaging this property and some 30 or 40 thousand more by mortgaging seven and a half acres of vacant land in Bayside. He says that the sums so received were paid out to creditors, but he has produced no records to substantiate his statement. We do not understand that it is claimed that the receipt and disbursement of these items appear on the records of the corporations above named. Moreover, those were not the only corporations through which the bankrupt did business. He testified to having used Isaac Muss Construction Company to transact personal business, and says this corporation kept no books. He also admitted having had a personal bank account at one time, but he produced no statements nor vouchers, and it does not clearly appear when the account was closed. Assuming, therefore, that a bankrupt may satisfy his obligation to record his personal transactions by keeping them in the books of corporations which he controls (see In re Lepine, D.C., 4 F.Supp. 808, affirmed, 2 Cir., 70 F.2d 1017), it does not appear that the corporate records the appellant has made available are adequate to disclose his transactions.

The bankrupt's schedules list unsecured creditors having total claims of more than $205,000, and contingent creditors in the sum of more than $800,000. Just when these liabilities arose does not appear. Many of them no doubt go back to guaranties which he signed in connection with obligations assumed by the corporations through which he was doing business. Where a bankrupt has engaged in financial transactions as extensive as those disclosed by this record, and has kept no records thereof, the court is justified in denying him a discharge. Indeed, it could not properly have done otherwise. See In re Underhill, 2 Cir., 82 F.2d 258.

Order affirmed.