Joel J. Weiner, of New York City, for bankrupt.

Archibald Palmer, of New York City, for objecting creditor.

**In re BLOCK.**

District Court, S. D. New York.

Aug. 22, 1939.

CONGER, District Judge.

This motion brings up for review a decision of the Referee herein, upon certain specifications of objections made by Metz & Metz, and U. S. Electric Manufacturing Corp., to the bankrupt's discharge. Separate specifications to the discharge were filed by Metz & Metz, and by the U. S. Electric Manufacturing Corp. At the time of the hearing, Morris Metz appeared and withdrew the specifications of Metz & Metz, but the U. S. Electric Man-

ufacturing Corp. was permitted by the Referee to proceed on both specifications of objections. There were a number of objections to the discharge of the bankrupt, contained in each set of specifications. However, the learned Referee has dismissed all of the objections by both creditors, except the second specification of Metz & Metz.

I think the Referee was correct in dismissing these objections, so that the only objection now in dispute is the second specification of Metz & Metz, which charges that the bankrupt destroyed certain ledgers, cash books, sales books and check stub books which were books of account from which his financial condition might be obtained.

I am satisfied, after reading all of the evidence, that the Referee erred in this last respect. In connection therewith, it should be noted, and it is important to this decision, that the Referee dismissed one of the objections of the U. S. Electric Manufacturing Corp. that the bankrupt failed to satisfactorily explain the deficiency of his assets. The Referee, in his opinion, states: "The remaining specification of the Electric company alleges a failure to satisfactorily explain the deficiency of assets. A satisfactory explanation was given."

This is a no-asset case. The Referee, having found that the bankrupt did explain the deficiency of his assets, the materiality of the books, papers, etc., complained of, is very small. As a matter of fact, it seems to me that the two findings are incongruous. I realize that it is not necessary on the part of the objecting creditors to prove an intention to defraud on the part of the bankrupt in the destruction of documents, etc. I am also satisfied that there are occasions where the destruction of the same is not of sufficient weight to warrant a refusal to grant a discharge of a bankrupt. This seems to me to be such a case.

The explanation given by the bankrupt for the failure to produce records, and for the destruction of those which were destroyed, is a satisfactory one, when all of his circumstances are taken into consideration. Some years ago he was a wealthy man; he had no financial worries. He kept no real records; his personal records were kept by his secretary, the Comptroller of the Noma Electric Corporation. He was the owner of a parcel of real estate which was managed by his wife and daughter. He owned certain stocks and bonds; he had no real business himself. He had been connected with a company in an executive capacity.

His bonds were hypothecated by the bank for certain large loans. Due to the depression he was wiped out. He lost his position with the company, so that 2½ years ago, from a position of security and wealth, he was penniless, and dependent upon his daughter for monies upon which to live. At that time he had some stubs of check books and a day book which he destroyed when he moved from his formerly palatial living quarters to a two-room apartment. At that time there was no thought of bankruptcy; prior to that there had been none. He had plenty of money at his command and no creditors.

I cannot see how the destruction of these check books and this day book, in any way affected the rights of the creditors, inasmuch as the Referee has held that he satisfactorily explained the loss of his assets. The record is a voluminous one; he apparently was cooperative on the stand. His creditors were few in number, but large in amount, and it is very apparent as to what became of his money and his assets.

The provision in the Bankruptcy Act (section 14, 11 U.S.C.A. § 32) regarding the destruction of books and papers is intended to protect the interests of the creditors. As is therein stated, he may not be discharged if he has destroyed, etc., books of account or records, "from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case." I can see no way in which the rights of the creditors in this matter have been impaired, or could be impaired.

As the Referee has held, the bankrupt made a clear statement of his financial operations. Whatever he destroyed 2½ years ago has been, it seemed to me, satisfactorily explained.

I do not regard the books which originally were in the file of Metz & Metz, as of great consequence. Those books were very old; the bankrupt had given them to Metz & Metz, and testified that they still had them or he thought they had them. However, a letter from Metz & Metz, which was admitted in evidence before me on the argument, the admission being con-

sented to by both parties herein, stated that Metz & Metz did not have the records herein; that they had been turned over to the bankrupt some years before, but the letter states that the records were all prior to 1928. Their non-production could have little effect here.

I am not unmindful of the cases quoted by the Referee in his decision. As a matter of fact, they may be distinguished, and some of them are really in support of this decision. For instance, in the case of Karger v. Sandler, 2 Cir., 62 F.2d 80, 81, the Court there stated: "* * * it is enough that his failure, or the destruction, was not 'justified under all the circumstances,' a vague phrase, admitting much latitude of construction. * * * the interests protected are those of creditors, and the bankrupt's conduct must affect their ability to learn what he did with his estate; but his fault need not involve any specific intent to balk their inquiries, though the standard is left at large, to be fixed ad hoc as the evidence may require. That is no doubt a very loose test, but no looser than some others; * * *."

In the case of Nix v. Sternberg, 38 F.2d 611, 612, the bankrupt had no books of any account, except one, but there was an extremely suspicious circumstance involved here. " 'The book produced shows mutilation. The explanation given by the Bankrupt is far from satisfactory. * * *' "

The case of In re Underhill, 2 Cir., 82 F.2d 258, 259, is authority for my holding herein. As was stated therein: "The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies."

The bankrupt having made full and complete disclosure, the books are of little value and not of sufficient importance and value so that the bankrupt may be refused his discharge for lack of the said books.

In the case of In re Muss, 2 Cir., 100 F. 2d 395, 396 (quoted by the Referee in his opinion), the bankrupt had no books of any kind. The court there denied the discharge of the bankrupt. That case may be distinguished, however, because it was extremely necessary that an explanation be made of certain figures. In the year 1928, there was prepared by a certified public accountant, a financial statement showing the bankrupt's assets as nearly $700,000, and his liabilities as $80,491.56. His bankrupt schedules showed creditors claims of $205,000 and contingent creditors in the sum of more than $800,000, and the court there stated: "Just when these liabilities arose does not appear." It is very apparent in that case, that the failure to have books was extremely detrimental to the creditors and to their interests.

Under the circumstances, I therefore sustain the exception to the Referee's decision and report with respect to the second specification of Metz & Metz, and as to that specification, the Referee's report is refused confirmation, and I hold that the bankrupt is entitled to his discharge. Submit order on notice.